**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**Frankfort Division**

| | |
|---|---|
| IN RE: : | |
| : | **Chapter 7** |
| RICKY J. DORSEY, SR. and : | Case No. 11-30829 |
| KAREN A. DORSEY, : | Judge Gregory R. Schaaf |
| : | |
| **Debtors.** : | |
| : | |
| J. JAMES ROGAN, TRUSTEE, : | |
| For the Bankruptcy Estate of : | |
| Ricky J. Dorsey, Sr. and : | |
| Karen A. Dorsey, : | |
| : | |
| **Plaintiff,** : | |
| : | Adversary No. 12-3010 |
| : | |
| vs: : | |
| : | |
| **VANDERBILT MORTGAGE &** : | |
| **FINANCE, INC.,** *et al.*, : | |
| : | |
| **Defendants.** : | |

**MEMORANDUM OPINION**

Before the Court are cross-motions for summary judgment filed by the Plaintiff J. James Rogan, as Trustee [Doc. 22], and the Defendant Vanderbilt Mortgage & Finance, Inc. ("Vanderbilt") [Doc. 23]. The Trustee claims Vanderbilt's mortgage on Debtors' interest in real property may be avoided pursuant to 11 U.S.C. § 544 because Vanderbilt was not entitled to enforce the note on the petition date. Vanderbilt argues it has a properly perfected mortgage and has the right to enforce the underlying note. A hearing was held on March 21, 2013.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. FACTS

The following facts are uncontested:

1. On December 19, 2011 ("Petition Date"), the Debtors, Ricky J. Dorsey, Sr. and Karen A. Dorsey, filed their Chapter 7 petition for bankruptcy under Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* ("Bankruptcy Code").

2. J. James Rogan is the duly appointed Chapter 7 Trustee for the bankruptcy estates of the Debtors.

3. On October 13, 2006, the Debtors executed a note in the amount of $108,000 ("Note") in favor of Popular Financial Services, LLC ("Popular Financial Services") and a mortgage ("Mortgage") on real property located at 1711 Fairmont Road, Lawrenceburg, Kentucky ("Real Property"). The Mortgage was granted by Debtors to Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as a nominee for Popular Financial Services, to secure repayment of the Note.

4. The Mortgage was recorded in the Anderson County Clerk's Office on October 24, 2006, in Mortgage Book 369, pages 288-303.

5. Also on October 13, 2006,[1] Debtors executed an Affidavit of Conversion of Real Estate ("Affidavit") converting a 2002 Clayton, Brookda mobile home to real estate. The Affidavit is recorded in the Anderson County Clerk's Office at Miscellaneous Book 3, pages 37-38. There is no argument from the Trustee that the lien on the mobile home was not properly perfected.

---

[1] The Joint Stipulations [Doc. 17] filed by the parties state the Affidavit was executed on October 14, 2007. However, a review of the document indicates it was executed on October 13, 2006.

2

6.      Pursuant to a Purchase and Sale Agreement ("Purchase Agreement") dated September 16, 2008, among Equity One, Inc. ("Seller"), Popular Inc. ("Parent"), Popular Mortgage Servicing, Inc. ("Servicer," and together with the Seller and Parent, the "Transferor Parties"), and Vanderbilt, Vanderbilt purchased all of Seller's right, title and interest in certain installment loan agreements described therein.

7.      In accordance with the Purchase Agreement, the Seller executed a Blanket Assignment and Bill of Sale ("Bill of Sale") dated September 16, 2008, to evidence conveyance of the installment loan contracts to Vanderbilt.

8.      The Schedule of Contracts conveyed by and attached to the Purchase Agreement, and incorporated into the Bill of Sale by reference, included a contract dated 10/13/2006 with Ricky J. Dorsey.

9.      Popular Financial Services is not a party to the Purchase Agreement or the Bill of Sale.

10.     The record is silent regarding any relationship between Popular Financial Services and the Transferor Parties.

11.     The Note does not contain an indorsement from Popular Financial Services to Vanderbilt (or any other entity).  Nor is there evidence in the record of any allonge or separate indorsement from Popular Financial Services to Vanderbilt (or any other entity).

12.     Vanderbilt was in possession of the original Note on the Petition Date.

13.     On January 12, 2012, MERS, as nominee for Popular Financial Services, executed an Assignment of Mortgage ("Assignment") to Vanderbilt.[2]  The Assignment was recorded on February 13, 2012, in the Anderson County Clerk's Office at Mortgage Book 475, page 666.

---

[2] "MERS was designed to avoid the need to record multiple transfers of the deed [mortgage] by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent holder."  *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1039 (9th Cir. 2011); *see also* Robert E. Dordan, *Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles, and the Chance for a Peaceful Existence*, 12 Loy. J. Pub. Int. L. 177, 180 (2010).

14. The Note, Mortgage, Affidavit, Assignment, Purchase Agreement and Bill of Sale are in the record.

15. The parties confirmed after oral argument that the matter is deemed submitted and each party would stand on the record.

## II. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Bankruptcy Procedure 7056, Federal Rule of Civil Procedure 56 applies in adversary proceedings.

> [O]n several occasions, the Court of Appeals for the Sixth Circuit has described the standard to grant a motion for summary judgment as follows:
>
> A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test, the moving party may discharge its burden by "pointing out to the [bankruptcy] court . . . that there is an absence of evidence to support the nonmoving party's case."

*Buckeye Retirement Co., LLC, Ltd., v. Swegan (In re Swegan)*, 383 B.R. 646, 652-53 (B.A.P. 6th Cir. 2008) (quoting *Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 198 (B.A.P. 6th Cir. 1998)).

The Supreme Court instructs a court to look beyond the pleadings and assess the proof needed to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 547, 587 (1986). After making an assessment of the proof, the determinative issue is "whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). In this regard, the moving party carries the burden of showing there is an absence of evidence to support a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

4

After the moving party meets this burden, the non-moving party must go beyond the pleadings to identify more than a mere scintilla of evidence showing that there is a genuine issue of material fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); FED. R. CIV. P. 56(e).  "The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  *Street*, 886 F.2d at 1479 (quoting *Anderson*, 477 U.S. at 257).

Upon consideration of the arguments of counsel, the cross motions, responses, briefs, all exhibits filed herein, applicable law and the record in this case, the Court finds that there are no genuine issues of material fact and the Trustee is entitled to judgment as a matter of law.

### III. LAW AND ANALYSIS

#### A. The Trustee is a Hypothetical Judicial Lien Creditor, but that does not Resolve the Dispute.

##### 1. 11 U.S.C. § 544 Provides the Trustee's Strong Arm Powers.

The Trustee accurately asserts that he is treated as a hypothetical judicial lien creditor pursuant to 11 U.S.C. § 544(a)(1).  Section 544 is one of several Code sections that help the Trustee gather property of the estate.  *Id.; see also* 11 U.S.C. §§ 545-551.  Section 544 gives the trustee "strong arm" powers, including rights as a hypothetical judicial lien creditor whose interest is perfected as of the petition date.   Section 544 provides in relevant part:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–
>
> (1) A creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

11 U.S.C. § 544(a)(1).

5

State law governs perfection of lien interests and will control whether the trustee, as a hypothetical judicial lien creditor, has an interest superior, or takes subject, to other liens. *Rogan v. Litton Loan Serv., L.P. (In re Collins)*, 456 B.R. 284, 293 (B.A.P. 6th Cir. 2011). In *Collins* the Bankruptcy Appellate Panel ("BAP") for the Sixth Circuit explained: "Therefore, 11 U.S.C. § 544 and Kentucky law, operating together, provide that the trustee's interest as a hypothetical judicial lien creditor is superior to those security interests which are unperfected as of the filing of the petition." *Id.* at 294.

### 2. This Argument Should not Focus on § 544.

#### a. The Trustee May Only Avoid or Recover Assets of the Debtors Through § 544.

The Trustee cites *Collins* as support for his contention that Vanderbilt did not have the right to enforce the Note on the Petition Date. The Sixth Circuit BAP in *Collins* recognized that "the issue in a § 544 claim is whether on the date of filing, the defendant holds a properly perfected enforceable mortgage that is superior to the Trustee's status as a hypothetical judicial lien creditor." *Collins*, 456 B.R. at 294. *Collins*, however, does not justify use of the Trustee's strong arm powers to recover the Note or Mortgage for the estate.

The Trustee challenges a missing indorsement; he does not dispute the validity of the Note or the Mortgage. "The promissory note and the mortgage (or deed of trust) are the two essential documents of a real estate loan. The note is the evidence of the indebtedness and the promise to repay the loan, while the mortgage is the pledge of specific realty as security for the debt." PAUL GOLDSTEIN, REAL ESTATE TRANSACTIONS 616 (2d ed. 1988).

The Debtors borrowed money from Popular Financial Services, evidenced by the Note, and granted a security interest in their Real Property to secure repayment, evidenced by the Mortgage. The Trustee does not deny the validity of this transaction. The Trustee also acknowledged he has no

specific issue with the form or timing of the Assignment, which conveyed the security interest evidenced by the Mortgage to Vanderbilt. *See Rogan v. Bank One, Nat'l Assoc. (In re Cook),* 457 F.3d 561, 567-68 (6th Cir. 2006) (recording the assignee's interest is not required for perfection, so assignment post-petition did not matter).

The Trustee's § 544 powers are limited to avoidance or recovery of actual or potential property of the bankruptcy estate. *Kapila v. Atlantic Mortg. & Inv. Corp. (In re Halabi)*, 184 F.3d 1335, 1337 (11th Cir. 1999). The Note and the Mortgage, as assigned, are not potential property of the Debtors, and the Trustee has no basis to bring such assets into the estate through his strong arm powers. The true concern is the right of Vanderbilt to enforce the Note because the chain of title in the record does not show how Vanderbilt came to possess the Note.

### 3. The Repercussion of an Unenforceable Note Is Consistent with § 544 Avoidance.

The term "perfection" is most often used to refer to the procedure to record a security interest so it is effective against other parties. Therefore, when considering a trustee's strong arm powers, the review looks at whether the mortgage and any assignment are assailable by the trustee, not whether the note is enforceable.[3] As stated, the Trustee acknowledges Vanderbilt is the legitimate holder of the Mortgage through the Assignment.

The Trustee argues that Vanderbilt may not enforce the Note, however. *See* Compl. 4 (The Trustee's prayer for relief provides in part: "That the Court issues a declaratory judgment that on the December 19, 2011 petition date, Defendants Vanderbilt and Popular Financial Services, LLC could not enforce payment of any indebtedness secured by the October 13, 2006 mortgage, Exhibit A; … .").

---

[3] It is possible to structure this analysis as a determination of whether the Note is "perfected." The Court in *Collins* mentioned perfection of a note (*Collins*, 456 B.R. at 293) and the Sixth Circuit has referred to "perfection" for Bankruptcy Code purposes. *Consider Morehead v. State Farm Mut. Auto. Ins. Co.*, 49 F.3d 445, 447 (6th Cir. 2001) ("According to the Bankruptcy Code, a transfer is perfected when a creditor on a single contract cannot acquire a judicial lien that is superior to the interest of the transferee. A more precise definition of perfection is left to state law.") In this case, however, discussion of the application of federal or state law is unnecessary.

7

The Sixth Circuit BAP in *Collins* suggested the issue might better stand as an objection to the creditor's claim. *Collins*, 456 B.R. at 296 (challenges to the postpetition right to enforce the note should be made as an objection to the proof of claim or an objection to relief from stay). If a note is pursued by a party that is not entitled to possess and to enforce it, the mortgage is meaningless. *Id.* at 294.

The question, therefore, is not whether the Mortgage is unperfected, but is it enforceable. Citing multiple cases, the Court in *Collins* explained:

> Under Kentucky law, without evidence of debt, there is no valid, enforceable mortgage. "A mortgage may be enforced only by ... a person who is entitled to enforce the obligation the mortgage secures." *Restatement (Third) of Property: Mortgages,* § 5:4 (1997). "[A] mortgage is merely incident to the debt or obligation it is given to secure[.]" *Warning's Ex'r v. Tabeling,* 280 Ky. 232, 133 S.W.2d 65, 67 (1939); *see also Grafton* v. *Shields Mini Markets, Inc.,* No. 2009-CA-001862-MR, 2011 WL 112833, *5 (Ky. Ct. App. Jan. 14, 2011). A mortgage is valid and enforceable only if the underlying debt continues to be an enforceable obligation. *Craddock v. Lee,* 61 S.W. 22 (Ky. 1901). "[W]ithout the debt, there is no mortgage." *Wells Fargo Fin. Ky., Inc. v. Thomer,* 315 S.W.3d 335, 339 (Ky. Ct. App. 2010); *see also Peoples Bank of Polk Cnty. v. McDonald (In re Maryville Sav. & Loan Corp.),* 743 F.2d 413 (6th Cir. 1984).

*Id.*

The result is essentially the same as assertion of the Trustee's strong arm powers against an unperfected mortgage. If Vanderbilt cannot enforce the Note, it is as if the Mortgage does not exist. The Mortgage would not secure repayment of anything if there is no enforceable promise to pay. Then, the Trustee's status as a hypothetical judicial lien creditor would allow the Trustee to sell the property and disburse the proceeds as if the Mortgage was not in the chain of title. *See infra* at Section IV. Although possibly only a matter of semantics, the Trustee's strong arm powers only allow the sale of property free of an unenforceable mortgage; these powers would not bring the Note or Mortgage into the estate.

**B. There is no Evidence in the Record Showing Vanderbilt has a Right to Enforce the Note Under the Kentucky UCC.**

    **1. The Kentucky UCC Provides the Framework for this Analysis.**

At the hearing, counsel for Vanderbilt argued that this Court's recent case of *Rogan v. Branch Banking & Trust Co. (In re Asberry)*, Nos. 12-50602, 12-5045, 2013 WL 781626 (Bankr. E.D. Ky. Mar. 1, 2013) supported Vanderbilt's position. The facts in *Asberry* have some similarity. Rogan, as Trustee, objected to the chain of indorsements of a note, arguing that there was no evidence the individual signing an indorsement on behalf of one of the banks was authorized. *Asberry* is not helpful, however, because here there is no indorsement on the Note to analyze.

This review must instead consider whether, on these facts, Vanderbilt may enforce the Note. The resolution requires review of the Uniform Commercial Code (the "UCC"), codified in Kentucky at Kentucky Revised Statutes §§ 355.1-101, *et seq.* (the "Kentucky UCC"). The enforcement provisions of the UCC "are designed to provide for the maker a relatively simple way of determining to whom the obligation is owed and, thus, whom the maker must pay in order to avoid defaulting on the obligation." *Veal v. Am. Home Mortg. Savs., Inc. (In re Veal),* 450 B.R. 897, 912 (B.A.P. 9th Cir. 2011). Payment to the wrong party would not act to pay down the note, opening the maker to a risk of duplicate payment if it pays the wrong party. "By contrast, the rules concerning transfer of ownership and other interests in a note identify who, among competing claimants, is entitled to the note's economic value… ." *Id.*

    **2. Vanderbilt is not a "Holder" of the Note.**

Under the Kentucky UCC a "[p]erson entitled to enforce" an instrument means: "(1) The holder of the instrument; [or] (2) A nonholder in possession of the instrument who has the rights of a holder." KY. REV. STAT. ANN. § 355.3-301 (West 2012). A "holder" means: "The person in

9

possession of a negotiable instrument[4] that is payable either to bearer or to an identified person that is the person in possession." KY. REV. STAT. ANN. § 355.1-201(u) (footnote supplied). The Note is specifically payable to Popular Financial Services. Vanderbilt has not produced an indorsement to it or to bearer. Therefore, Vanderbilt is not the "holder" of the Note under the Kentucky UCC § 355.1-201(u).

Whether Vanderbilt's possession gives it the rights of a holder, and thus a right to enforce the Note, requires further analysis of the Purchase Agreement and Assignment.

### 3. Vanderbilt is not Recognized as a Transferee of the Note under the Kentucky UCC, so it may not Enforce the Note.

Vanderbilt has not produced a valid (any) indorsement, so it wants the Court to find its right to enforce the Note through other means. When asked at oral argument to point the Court to evidence of Vanderbilt's right to possess and enforce the Note, counsel referenced two documents: the Purchase Agreement and the Assignment. The Assignment transferred the Mortgage to Vanderbilt and is properly recorded. The Purchase Agreement purports to transfer installment loan contracts to Vanderbilt, and it does reference the Note as one of many notes transferred to Vanderbilt by that document.

Although more complicated, the Ninth Circuit BAP in *Veal* discussed the ability to enforce a note by a creditor that possessed the note, but was not the original payee or in possession of an indorsement (to the creditor or bearer).[5] The court provided:

> This places a great deal of weight on the UCC's definition of a "transfer." UCC § 3-203(a) states that a note is transferred "when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." As a consequence, while the failure to obtain the indorsement of the payee or other holder does not prevent a person in possession of

---

[4] Neither party asserts that the Note is not a "negotiable instrument."

[5] *Veal* involved standing issues related to the creditor's right to stay relief and an objection to the note servicer's proof of claim. The Ninth Circuit BAP remanded the case for further findings.

>   the note from being the "person entitled to enforce" the note, it does raise the stakes. Without holder status and the attendant presumption of a right to enforce, the possessor of the note must demonstrate both the fact of the delivery and the purpose of the delivery of the note to the transferee in order to qualify as the "person entitled to enforce."

*Id.* at 911-12.

The creditor in *Veal* provided no evidence to show it was a holder, a person entitled to enforce the note, or an entity with an ownership or other interest in the note. *Id.* at 917. With the stakes raised against it, Vanderbilt has also failed to provide such information. Neither the Purchase Agreement nor the Assignment support the chain of title Vanderbilt needs to enforce the Note.

The Kentucky UCC provides three methods to accomplish "transfer" of an instrument whereby the transferee receives the rights of the transferor. None apply to these facts.

### a. The Purchase Agreement does not Transfer the Note to Vanderbilt.

#### i. KY. REV. STAT. ANN. § 355.3-203(1).

First, "[a]n instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." KY. REV. STAT. ANN. § 355.3-203(1). Where, as here, the Note is payable to "an identified person, negotiation requires transfer of possession of the instrument *and its indorsement by the holder.*" KY. REV. STAT. ANN. § 355.3-201(2) (emphasis supplied). The Note is not indorsed, so Vanderbilt is not a transferee under this section of the Kentucky UCC.

#### ii. KY. REV. STAT. ANN. § 355.3-203(2).

Next, the Kentucky UCC provides that "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument," except in cases of the transferee's fraud or illegality affecting the instrument. KY. REV. STAT. ANN.

§ 355.3-203(2). Sections 355.3-203 and 355.2-301 of the Kentucky UCC mirror §§ 3.203 and 3.301 of the UCC. The Official Comment to § 3-203 of the UCC provides:

> Subsection [(2)] states that transfer vests in the transferee any right of the transferor to enforce the instrument "including any right as a holder in due course." If the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument under Section 3-301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection [(2)] the transferee obtained the rights of the transferor as holder. Because the transferee's rights are derivative of the transferor's rights, those rights must be proved. **Because the transferee is not a holder, there is no presumption under Section 3-308[6] that the transferee, by producing the instrument, is entitled to payment**. The instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired it. Proof of a transfer to the transferee by a holder is proof that the transferee has acquired the rights of a holder.

UCC § 3-203 cmt. 2 (2002) (emphasis and footnote supplied).

The record reflects that Popular Financial Services, as the named payee of the Note, was the entity that needed to indorse the Note to transfer the rights of a holder at the time the Purchase Agreement was executed. Popular Financial Services is not, however, a party to the Purchase Agreement or the Bill of Sale. Also, the record does not contain any evidence to show whether or how the Seller came to possess the Note.

The Purchase Agreement indicates the two other Transferor Parties are the parent and an affiliate of the Seller. The redacted agreement put in the record by Vanderbilt does not explain why these entities were parties to the Purchase Agreement or provide any link to Popular Financial Services.[7] Also, the record does not show any of the Transferor Parties ever owned or had possession of the Note.

---

[6] Section 3-308 provides that the signature on an instrument "is presumed to be authentic and authorized" except in circumstances not relevant to this case. Where the signature on the instrument is valid, the entity "producing the instrument is entitled to payment if [such entity] proves entitlement to enforce the instrument under KRS 355.3-301." KY. REV. STAT. ANN. § 355.3-308.

[7] The similarity of the names of the other Transferor Parties, Popular, Inc. and Popular Mortgage Servicing, Inc., is insufficient to create a link to Popular Financial Services.

12

Vanderbilt cannot rely on Kentucky UCC § 3-203(2) because Vanderbilt failed to prove that any of the Transferor Parties had the right to hold or enforce the Note.

### iii. KY. REV. STAT. ANN. § 355.3-203(3).

The third recognized method of transfer absent an indorsement, cited by Vanderbilt, is found in subsection (3) of § 3-203 of the Kentucky UCC. This subsection provides:

> Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsements by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor, but negotiation of the instrument does not occur until the indorsement is made.

KY. REV. STAT. ANN. § 355.3-203(3). The UCC Official Comment to this subsection provides: "Subsection [(3)] applies only to a transfer for value. **It applies only if the instrument is payable to order or specially indorsed to the transferor**." UCC § 3-203 cmt. 2 (2002) (emphasis supplied). Whether Vanderbilt has a "specifically enforceable right to the unqualified indorsement" of the intended transferor, Popular Financial Services, under § 355.3-203(3) of the Kentucky UCC is not at issue. As already noted, Vanderbilt supplied no evidence that any of the Transferor Parties obtained the status of a "holder" prior to transferring the Note to Vanderbilt.[8]

The Purchase Agreement does not support Vanderbilt's argument that it is entitled to enforce the Note.

### b. The Assignment of the Mortgage did not Convey the Note.

The review of the Assignment as an instrument that transferred the Note to Vanderbilt follows the same track as the analysis of the Purchase Agreement for the same purpose. The Assignment, by

---

[8] Compounding Vanderbilt's problems in obtaining the indorsement of Popular Financial Services is the fact that a Default Judgment was entered in this Adversary Proceeding. *See* Doc. 21. The Default Judgment provides "[t]hat plaintiff as a judicial lien creditor has priority over the interest, if any, of Defendant Popular Financial Services, [LLC] in the real estate described in the complaint." Default J. ¶ 1. Following the foreclosure suit analysis, this potential interest holder did not step forward to claim any interest, so the Trustee will take ahead of any claim that party may have when the Real Property is sold.

13

its own terms, does not purport to and does not transfer the Note, so Kentucky UCC §§ 355.3-203(1) and 355.3-203(2) do not apply. Also, there is nothing in the Assignment that shows MERS ever had rights in the Note. Therefore, Kentucky UCC § 355.3-203(3) is not satisfied.

The Assignment effectively transfers all of MERS' "right, title and interest in and to" the Mortgage to Vanderbilt. J. Stips. Ex. 5. As already indicated, the Trustee does not raise any issue with the form or perfection of the security interest evidenced by the Mortgage or its transfer from MERS to Vanderbilt by the Assignment. Therefore, Vanderbilt argues that MERS' rights under the Mortgage somehow included rights in the Note, which were also transferred to Vanderbilt by the Assignment. Vanderbilt's argument is not persuasive.

MERS' rights under the Mortgage do not include any rights in the Note.[9] MERS is only the "nominee" of Popular Financial Services. *See* J. Stips. Ex 4, at 3. As analyzed hereafter, in its capacity as "nominee," MERS holds only legal title to the security interest evidenced by the Mortgage.[10]

Under the Mortgage, MERS did not "obtain any right to the [Debtors'] payment or even a role in receiving payment." *Royal v. First Interstate Bank (In re Trierweiler),* Nos. 10-20499, 10-2035, 2011 WL 5843651, at *4 (Bankr. D. Wyo. Nov. 21, 2011) (analyzing a mortgage granting substantially the same rights to MERS as "nominee" as in this case); *see also In re Wells*, 407 B.R. 873, 880 (Bankr. N.D. Ohio 2009) (analyzing Ohio Uniform Commercial Code § 1303.22, which is the same as the Kentucky UCC § 355.2-203 and finding that "the right to enforce a note cannot be

---

[9] Counsel for Vanderbilt acknowledged at oral argument that MERS, as nominee under the Mortgage, had no rights thereunder.

[10] In addition to the lack of any rights transferred to MERS by the Mortgage, there is no legal or factual basis to give the "nominee" in the Mortgage more rights than merely holding the security interest. Black's Law Dictionary defines "nominee" as either a person proposed for some title or status or: "2. A person designated to act in place of another, usu. in a very limited way. [or] 3. A party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." Black's Law Dictionary 1149 (9th ed. 2009).

assigned—instead, the note must be negotiated in accord with . . . the Uniform Commercial Code. An attempt to assign a note [by assignment of the related mortgage] creates a claim to ownership, but does not transfer the right to enforce the note.") (citations omitted); *In re Box*, No. 10-20086, 2010 WL 2229289 (Bankr. W.D. Mo. June 3, 2010) (MERS was neither the holder of the note or an agent for the original lender with respect to the note. Therefore, creditor could not rely on assignment of the mortgage by MERS, as nominee, to effect a transfer of the note.).

All of the usual rights granted by the Mortgage accrue to the benefit of, the "Lender," which is defined as "Popular Financial Services, LLC." J. Stips. Ex. 4, at 3. The terms of the Assignment are legally correct, as MERS only nominally held the Mortgage; it never received an interest in the Note from Popular Financial Services.

The Assignment does not give Vanderbilt the right to enforce the Note.

C. **Sale of the Real Property.**

The Complaint further seeks an order of sale and that Vanderbilt come forward and prove any interest it has in the Note and Mortgage or be forever barred.[11] *See* Compl. 5. This request is comparable to a state law foreclosure action by a judicial lien creditor. The judicial lien creditor brings a foreclosure suit naming all parties in the chain of title, including potentially senior lien holders. Each defendant must come forward and prove its position or the party will not share in any sale proceeds.

Vanderbilt had a full and fair opportunity to prove it may enforce the Note, and therefore the Mortgage, but it did not. The Trustee is entitled to an Order that authorizes sale of the Property free of any right, claim or interest Vanderbilt might claim through the Note and/or Mortgage. The Court

---

[11] All matters in the Complaint are ripe for decision. *See supra* Section I.15.

15

will require, however, action in the main case to structure a reasonable sale process designed to ensure the highest and best return for the Debtors' bankruptcy estate.  11 U.S.C. §§ 363(b) and (f).

This decision does not determine the Mortgage is not perfected, which means it is a lien against the Real Property pending sale free and clear of liens, with liens to attach to the proceeds, pursuant to 11 U.S.C. §§ 363(b) and (f).  Allocation of the sale proceeds will occur through the sale process in the main case.

## IV. CONCLUSION

There is no doubt the Note itself is a legitimate obligation of the Debtors and the Debtors conveyed a security interest through the Mortgage to secure repayment.  The Trustee admitted this at oral argument, and the Court's review finds nothing wrong with the original documentation.  But the record does not show how the Note moved from Popular Financial Services to Vanderbilt in a manner that would transfer the rights of Popular Financial Services to Vanderbilt.

The affected creditor may find the result harsh and allege a windfall to the estate, as is common in bankruptcy recovery actions.  But the record indicates that, prior to Vanderbilt obtaining possession of the Note, Popular Financial Services was the owner and holder of the Note and the only entity currently entitled to enforce payment of the Note.  The record contains no evidence Popular Financial Services transferred its rights as a holder to Vanderbilt through an indorsement or any other means.  Trying to shoehorn the facts into a conclusion that Vanderbilt may collect on the Note could result in duplicate payment and/or create a windfall for a person that might not have any legitimate claim to ownership.  Although there is no reason to suspect Vanderbilt is acting inappropriately, it is improper to order payment to Vanderbilt merely because some party is entitled to payment on the Note.

NOW THEREFORE, the Trustee has sought, and based on the decision herein, the Court,

finds, determines, and GRANTS, the following relief:

1.  On December 19, 2011, Defendant Vanderbilt possessed a validly perfected mortgage but not an enforceable Note. Therefore Vanderbilt may not enforce the Note and consequently may not enforce the Mortgage.

2.  The Trustee is authorized to sell the Real Property, free of all interests, with priority to attach to the sale proceeds, subject to entry of sale and distribution orders in the main case.

3.  All other relief sought by the Trustee not specifically granted herein is otherwise DENIED.

4.  Vanderbilt's cross-motion for summary judgment is DENIED in its entirety.

An order in conformity with this Memorandum Opinion is entered contemporaneously herewith.

**COPIES TO:**
J. James Rogan, Esq.
David T. Reynolds, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Monday, May 06, 2013**
**(grs)**